Thank you, Your Honor. Good morning. May it please the Court. My name is Catalina Gracia, and I represent the petitioner Victoria Alvarez. At this time, I'd like to reserve two minutes for rebuttals. Your Honor, there are several issues at hand here, but first I'll start with whether an alleged persecutor's perception is sufficient to establish a particular social group or political opinion for purposes of asylum relief. Here, the petitioner alleges both. First, she alleges that she held an anti-gang political opinion, as evidenced by the fact that she refused to allow a gang member refuge in her home from the police. Second, she contends that even if she did not specifically express her political opinion, her alleged persecutor would have imputed such based on her conduct. The Rigaldo Court, citing Zi Hong Hu, a 2011 Ninth Circuit case, has held that opposition to the strategy of using violence can constitute a political opinion. Similarly, the Court in Borjas held that an asylum applicant may manifest a political opinion by his refusal to join or support an organization. Borjas was later overturned on different grounds. Was the organization in that case a political organization? In Borjas, Your Honor? Yes. I believe it was not, Your Honor. I believe that case was related to a Venezuelan government claim. That's what I mean. It was a political organization. The organization who refused to join was a political organization, no? Well, Your Honor, arguably here in Salvadorian society and much of Central America, gang members are considered a political opinion because they do have much power and control over the country and over the police and over the government. So, arguably, 18th Street Gang is a political organization, given the power that they have and the extent they have to control and persecute members of the society with little or no recourse. I mean, suppose that, for sake of argument, we grant your general proposition that opposition to a gang can be a political opinion. The Board said, at page 2 of its order, we were unable to discern any evidence establishing that gang members either imputed a political opinion to the respondent or mistreated her to punish her on account of that opinion. Why is that wrong? Well, Your Honor, I argue that there is a specific claim by the petitioner in this case that she did, in fact, express her political opinion when she refused to give them refuge in her home. But that, I mean, the problem with that is that, I mean, she may have just refused to give them refuge, probably refused to give them refuge in her home because she didn't want gang members in her home because they were dangerous people. But is that the same as having an overall political opinion that gangs were bad and should be eliminated and so on? Well, standing alone, Your Honor, it's not sufficient. But the fact that later that same day, a gang member came up to her and told her that she had to respect the gang and threatened to kill her and her family if she didn't respect the gang, that's where we essentially reach a nexus in this case to her political opinion. Isn't that just she's a victim of a crime, which we've repeatedly said isn't sufficient? That would be just a victim of a crime if it hadn't followed her refusal to allow these members refuge in her home. And if the statement by the persecutors hadn't been, you have to respect the gang, right? So they tie it back to her position that essentially she doesn't respect the gang because she doesn't hold the political opinion that supports their acts or supports their conduct or their purposes. So alone, it wouldn't be sufficient if she had just been threatened. But the fact that she was threatened immediately following her refusal to allow them refuge in her home is where the heart of her claim lies. And in this case, immediately after that, her family began to get harassed, not only for extortion purposes, which arguably can be a generalized crime, but it all followed. It all started after she refused to allow these individuals into her home. And that's where the problems for her and her family started. The threat started and she was told not to report this to the police. By these gang members telling her not to report this to the police, we can argue that they thought she would report it to the police. And so there's another claim for her political opinion or for her particular social group is individuals who are believed to have reported crime to the police. So they believe that she has the intention to act against their interests, against the interests of this political organization. And so this is where her nexus to the political opinion that she's claiming. Is there any case which regards gangs in Central America as a political organization? Your Honor, not specifically, but we can go back to the Rigaldo court. And they cite a Ninth Circuit case where they hold that opposing the strategy of using violence can constitute a political opinion. So here, the strategy of using violence is the strategy of the gang members. And so if the Rigaldo court held that opposing that strategy can constitute a political opinion, then that's very analogous to the case here. And if we go further and see if she has established the so-called two-pronged test of the Rigaldo court, she has. She has established that she has a political opinion. This is evidenced when she refused to allow these individuals into her home. And second, she was harmed for that. Later on that day, she was threatened because she didn't allow these individuals into her home. And if she were to return to El Salvador, if she were to return, she would still hold these political opinions and would continue to be persecuted. Which case are you talking about? Rigaldo, is that what you're talking about? Yes, Your Honor. Rigaldo Escobar, that's what you're talking about? Yes, Your Honor. Which is an unpublished opinion? Yes, Your Honor, but it does cite a published Ninth Circuit case. All right, what's the published Ninth Circuit case? Diang Hu, and that's a 2011 Ninth Circuit case, Diang Hu. Okay, thank you. So you're relying on Jiang Hu, that's what you're relying on? Yes, Your Honor. I was referring to Rigaldo because that's where essentially this Tupac test is laid out where one is establishing a political opinion. But we don't rely on unpublished opinions. Understood, Your Honor. Then solely looking at the fact that the 2011 Ninth Circuit case held that the opposition of using violence can constitute a political opinion. Obviously, we have to look at this as a whole. We have to look at her actions. We have to look at what followed her actions. And before she had contact with the gangs, when she refused them entry in her home, she didn't express that she had any issues with them. She didn't express that she had encounters with them prior to that initial encounter that led to all of these issues. There is case law that supports imputed political opinions. So even if she didn't outright tell this gang member or these gang members that she opposes the gangs or she opposes their way of life, she did by her actions. And Your Honor, even setting that aside, there's also the issue here. If I can ask one other question. Other than her refusing to let the gang members come to her house, is there any other evidence that you're relying on as evidence of her anti-gang opinion? Other than not allowing them into her home, Your Honor? Is that or are there other things that you're relying on? Well, on her part, her actions, I'm relying on that. But as to my claim that she had also an imputed political opinion, I'd look to the actions of the gang members because that's where we have evidence that they imputed a political opinion. And specifically where they tell her to respect the gang and where they threaten to kill her if she doesn't respect the gang and threaten to kill her family. So this is psychological harm that she suffered, if not because of her own actions that demonstrated she had a political opinion, but because they're imputed and we can see that by the fact that the gang members told her. Did the IJ or the BIA find that there was sufficient evidence of persecution when they didn't reach that question? Your Honor, the IJ did indicate that she did not believe the conduct that was expressed by the petitioner rose to the level of persecution. But did the BIA reach that question? Your Honor, I believe the BIA did not reach the question of whether this rose to the level of persecution. They just reaffirmed the decision by the immigration judge. So they did. So they did a brabant affirmance, is that what they did? Yes, Your Honor. So they did reach the question. They did reach the question, but not specifically, Your Honor. They didn't address it specifically. Generally, they reaffirmed the IJ's position as to why she believed that the level of persecution had not been reached in this case. But here, based on testimony by the petitioner, she does show that she and her family suffered persecution such that they had to flee El Salvador because they felt that they were not safe. She felt that her life and the life of her two daughters would be endangered if they continued to live there. And that's evidence of her essentially having suffered persecution. It wasn't physical in this case, but definitely psychological harm was suffered. Somebody threatening you in your home when you have two small children is definitely persecution. And I would argue that that's a real harm, even if they never laid hands on her or her daughters. And, Your Honor, part of another issue here that was only briefly touched on was that the petitioner argues that her husband – doesn't argue, but she states that her husband may have allowed gang members to stay in their backyard. And so that might be a reason that further harm wasn't suffered. Not because they decided to leave them alone, but simply because her husband agreed to something that they asked of. But that's not her position. That wasn't what she would have done. She clearly would have told them they can't stay here and they have to leave because that's how strongly she felt about her political opinion, not wanting these gang members in her home, not supporting that lifestyle. So we don't know what would have happened if her husband had refused to give them refuge the second time. But we do know that if she goes back to El Salvador, she's going to be alone. She's not with her husband anymore. She's had no contact with him. And she shouldn't be forced to change her political opinion and just support gang members and provide them refuge because she wants to stay safe. And arguably the government in El Salvador – and this is all based on the country conditions report that were provided – they don't have the ability to protect her or keep her safe because the gangs are controlling the area, they control the country. And it's just a very difficult situation. So I don't believe that she would be safe and her political opinion was the basis for her persecution initially. And there's no reason to believe that future persecution won't be based on the same because she is not required to change her political opinion. That's what she believes, her anti-gang sentiments are what she believes in and how she will continue to live her life even in El Salvador. And that's where future persecution will come into play here. And Your Honor, is there something else? I was just going to note that you wanted to reserve some time. Yes, Your Honor, and I submit. Thank you. Okay. And you can save the rest of your time and we'll hear from the government. Yes, Your Honor. Thank you. Ms. Robinson, you're still muted, I think. I apologize. I was told there were two ways to unmute and apparently there's only one. So our position is that substantial evidence supports the agency's conclusion that Ms. Alvarez did not show any nexus to a statutorily protected ground or qualify for protection of the Convention against Torture. The board concluded that the gang members were motivated to extort her solely for economic gain and that the other threats she or her husband received were when gang members wished to avoid apprehension by the police. And the record does not compel a contrary conclusion. I did just want to note as an initial matter that the immigration judge did find that the threats did not rise to the level of persecution. The board did not reach that issue beyond affirming the decision of the immigration judge and instead rested solely on nexus. So I know there was a fair amount of time spent on political opinion. I'll just note that there's simply no evidence in the record that Ms. Alvarez ever expressed a political opinion or that the gang imputed one to her. She did describe an incident when an 18th Street gang member came by, wanted to hide in her house. She did not let him in to hide. And ten minutes later, a gang member came by and told her to respect the gang and not to talk to the police. In her declaration at page 280 through 82, she says that gang members, it sounds like it was a relatively violent area, there was a fair amount of gang violence, and gang members in the area would frequently go and seek to hide when they wished to avoid apprehension. So all of the statements about how she expressed a political opinion are simply not supported by the record. She actually told the gang member that she was not giving information to the police. That's at page 118. And he then warned her not to and said she did not want to have anything happen to her daughters. Then there was another incident when a gang member was again playing the police, and this time Ms. Alvarez's husband let him in to hide. She described how there was the police staying, gang members would hide in the houses of people who were not being affiliated to avoid apprehension. That's page 134 through 37. Again, the gang member warned her husband this time not to say anything. Her husband said he would not, and he didn't. Neither Ms. Alvarez nor her husband ever reported any of these incidents to the police. So this political opinion claim is premised on, frankly, just a lack of evidence and general opposition to being the victim of a crime. And so the agency properly concluded that there was not a nexus to any political opinion. Similarly, while she alleged that there was a nexus to her family, the agency reasonably concluded that the gang extorted Ms. Alvarez and her husband because they owned a business. She testifies to that, pages 126 through 33. And I would just say the differences between the two incidents when the gang members were fleeing supports that the gang member's motivation here was due to criminal goals and not any sort of protective characteristics. Because once her husband said he wouldn't say anything and he let the gang member in to hide, that was the end of that interaction. That was what the gang member wanted. At one point they said something like you have to respect the gangs. That sounds like some kind of an imputation of you have to approve of us. So I believe what you're referring to is page 117 of the transcript where she says, He told me that you respect the gang because we have no reason to be talking to the police. And then she says, he thought that I was giving information, which I did not. Then she says, she doesn't know why I thought that she was giving information because she wasn't. She told him she wasn't giving information and then he told her to be quiet. And in her declaration she outlines how the gang members basically did not want anyone to be talking to the police generally. So because they frankly sounds like did not want to be arrested or prosecuted for their offenses. And she outlines the police staying as well when the gang member was saying, don't say anything to the police. I mean, I think the context is also relevant here because both of these times gang members were fleeing the police and they're saying, don't say anything to the police, I'm hiding here. And so I think that context is also relevant as well. And so I'm now just going to turn to the agency's determination that the alleged particular social group of Salvadoran women believed by gangs to have identified the gang's crimes to police, that there was not any nexus and that group is not legally cognizable. I won't belabor the point too much since I'm sure the panel, especially Judge Berzon is very familiar with Condé Cuevado among others. But I'll just note, there's no evidence that the gang actually believed that she reported him. She speculates that that is why the gang said that, but that is not compelled by the record. As the court noted in Condé Cuevado, even if the petitioner is correct and the gang members believe that this person identified them, then that can become a question of revenge or retaliation. And finally, the record doesn't compel the conclusion that this group is socially distinct or particular. The terms themselves are ambiguous and there's no evidence of social distinction. And this court has emphasized that this is a fact specific inquiry where objective evidence is required. So I would just say this case is more akin to Aguilar Osorio or Condé Cuevado, where groups of witnesses who could testify and people who report criminal activity were found to not be cognizable. Whereas in matter of HLSA, it noted that witnesses who testify in open court was found to be cognizable. And it is a fact specific inquiry, and I would just say that in this case, there's simply no evidence presented that people who could but don't report crimes to police in El Salvador make up a socially distinct or particular social group. And furthermore... The BIA suggested that or said that there was no evidence that they believed that she had in fact talked to the police, but that's not quite accurate. Is that right? I mean, she did say that they thought she had talked to the police, even though she hadn't. Great. So what she says in the transcript of pages 117 through 18 are helpful. She says that she thinks that, but there was no reason provided for why she believed that the gang member thought that. And it seems that she was indicating, and I don't want to overstate the record, but it seems that she was indicating that she believed the gang member told her that simply because he told her not to say anything to the police. But I would just posit that that's not the only reason a gang member who is suing police might warn you not to talk to police. I mean, to some extent, if the gang member is solely warning people who he believes are talking to police, at that point the person is sort of out of the barn, so to speak. It seems far more likely, as she outlined in her declaration, that this is sort of a generally violent area, and that gang members would generally tell people not to talk to police and to be careful about who you talk to. Simply because they don't want people reporting their crimes, and they want to be free to continue to extort and carry out their criminal aims, which is unfortunate, but it's not a basis for... it's not in this case. And furthermore, I'll just point out, the board found that there was no withholding, because there was no access at all to a protected ground, and declined to remand on that basis. I'll just note that there's simply no evidence here to show that the gang members were motivated by any sort of particularized characteristic. The immigration judge's decision at 57 through 58 just notes that there's no evidence that her family or her political opinion or any particular social group played any role here. It was a matter of gang members targeting people because they thought they had money, a crime of opportunity, because they wanted to hide in someone's house and make a claim. And she didn't express and they didn't impute any sort of political opinion to her. And I believe I'm done with the asylum and withholding portion. I was going to proceed to the CAT analysis, unless anyone has any questions. No. It appears not. Okay, thank you. I don't want to cut anyone off. I think the asylum things are very interesting, but I'll proceed if no one has any questions. So for CAT protection, the board and the immigration judge noted that this was based on generalized violence. It was not particularized to her. And there was no evidence of consent or acquiescence by the Salvadoran government. She was not harmed. She did not report any of these incidents. And her testimony actually shows that the gang did not wish to be reported to the police. That was and is the basis of her claim. And furthermore, I'll just note that record evidence supports the agency's conclusion that the government of El Salvador is combating gang-related violence. So the Department of State reports for 2016 and 2017, the first three pages of the 2016 report and the first seven pages of the 2017 report, both were referenced by the agency and discussed the extraordinary measures to combat gang-related violence. So in conclusion, I'll just state that the agency's nexus determination here is correct. It was supported by substantial evidence. And Ms. Alvarez did not show any particularized risk of torture in El Salvador. She was unfortunately the victim of gang-related violence, but the motivation of the gang members. The record doesn't compel a contrary conclusion to the agency. And therefore, I'd ask the court to deny the petition for review. Thank you, Ms. Robinson. Ms. Gracia. Thank you, Your Honors. I'd like to go back to the assertion that the record does not compel a finding of a political opinion. Here, testimony from the petitioner establishes clearly that prior to the incident where she refused to allow these gang members into her home, she had had no negative contact with gang members despite living in a high-crime area. She states that following the incident where she did not allow this gang member into her home, she started to have negative contact in the form of extortion and threats, and all of this can be viewed as generalized violence. However, in this incident, it's specific and ties back to her refusing to support this organization, and that is what started all of this. And so an analysis, a deeper analysis of her political opinion is necessary to see if this imputed political opinion is the real reason why she was targeted and if this political opinion... Did she eventually give them some money when they were extorting her? She says she doesn't know, Your Honor. She says she doesn't know if her husband ever gave them any money. She personally did not give them any money. I see. But in the record, she does state that she doesn't know what her husband did with regard to that. I see. But she held firm to her anti-gang position throughout. In her testimony, in her written declaration, her anti-gang political opinion was asserted throughout, and... You know, I look back at the Xinjiang coup case, in which the political opinion was specifically a political opinion against the Communist Party. It was not just about violence or organizations or anything like that. So I ask again, is there any support and any presidential opinion in this court for the proposition that a gang is a political organization or that opposing a gang is a political opinion? Your Honor, I suppose we could go to the country conditions report. No, I'm not asking you that. I'm asking you whether there is any legal support for your political opinion argument. No, Your Honor, and maybe that's what will come out of this hearing today. There's no support that a gang is a political organization. There is just the argument that a gang is a political organization based on the control and the power that they have in the areas where they are in Central America and El Salvador in this instance. The power and the control that they have over the government and over citizens is very arguably enough to establish them as a political organization. And at this time, our request is that the case be remanded, and I submit on the record, thank you, Your Honors, for your time. Thank you, Ms. Gracia. We thank both counsel for their arguments. The case is submitted. We will now take a five-minute recess. All rise. This court stands in recess for five minutes.
judges: BERZON, MILLER, LEE